GIBSON, DUNN & CRUTCHER LLP
CHRISTOPHER CHORBA, SBN 216692
  cchorba@gibsondunn.com
TIMOTHY LOOSE, SBN 241037
  tloose@gibsondunn.com
ADRIENNE LIU, SBN 331262
  aliu@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000
Facsimile: 213.229.7520

PAUL HASTINGS LLP
BEHNAM DAYANIM *(pro hac vice)*
  bdayanim@paulhastings.com
2050 M Street, NW
Washington, DC 20036
Telephone: 202.551.1700
Facsimile: 202.551.1705

SEAN D. UNGER, SBN 231694
ANDY LEGOLVAN, SBN 292520
  seanunger@paulhastings.com
101 California Street
San Francisco, CA 94111
Telephone: 415.856.7000
Facsimile: 415.856.7100

Attorneys for Defendant META PLATFORMS, INC.,
(f/k/a Facebook, Inc.), a Delaware corporation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: FACEBOOK SIMULATED CASINO-STYLE GAMES LITIGATION | Case No. 5:21-cv-02777-EJD<br><br>**REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF MOTION TO DISMISS COMPLAINT UNDER SECTION 230 OF THE COMMUNICATIONS DECENCY ACT**<br><br>**Hearing**:<br>Date: August 4, 2022<br>Time: 9:00 AM<br>Place: Courtroom 4 – 5th Floor<br>Judge: Hon. Edward J. Davila |

Gibson, Dunn & Crutcher LLP

REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 2

    A. A Publisher Theory of Liability Pervades All Claims in the Complaint ...................... 3

        1. The Complaint Expressly Pleads a Publisher Theory of Liability. ................... 3

        2. *HomeAway* Does Not Apply to Plaintiffs' Claims, All of Which Depend on the Nature of Third-Party Content. .................................................. 4

        3. Plaintiffs Cannot Avoid Section 230 by Recharacterizing Publication Activity as Unfair Business Practices. ............................................................... 8

    B. The Complaint Should Be Dismissed Without Leave to Amend ............................... 10

III. CONCLUSION .................................................................................................................... 10

ii
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Airbnb, Inc. v. City and Cty. of S.F.*,
　217 F. Supp. 3d 1066 (N.D. Cal. 2016) ..................................................................................5

*Barnes v. Yahoo!, Inc.*,
　570 F.3d 1096 (9th Cir. 2009)................................................................................................9

*Calise v. Meta Platforms, Inc.*,
　No. 21-cv-06186-JSW, 2022 WL 1240860 (N.D. Cal. Apr. 27, 2022) ..................................9

*Coffee v. Google, LLC*,
　No. 20-cv-03901-BLF, 2022 WL 94986 (N.D. Cal. Jan. 10, 2022) .......................................7

*Doe v. Internet Brands, Inc.*,
　824 F.3d 846 (9th Cir. 2016).............................................................................................4, 6

*Doe v. Roblox Corp.*,
　No. 21-cv-03943-WHO, 2022 WL 1459568 (N.D. Cal. May 9, 2022) .................................7

*Dyroff v. Ultimate Software Grp., Inc.*,
　934 F.3d 1093 (9th Cir. 2019)........................................................................................6, 8, 9

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
　521 F.3d 1157 (9th Cir. 2008) (en banc)...........................................................................2, 3

*Fed. Agency of News LLC v. Facebook, Inc.*,
　432 F. Supp. 3d 1107 (N.D. Cal. 2020) .................................................................................4

*Free Kick Master LLC v. Apple Inc.*,
　140 F. Supp. 3d 975 (N.D. Cal. 2015) ...................................................................................4

*Gentry v. eBay, Inc.*,
　99 Cal. App. 4th 816 (2002) ..................................................................................................8

*Goddard v. Google, Inc.*,
　No. 08-cv-02738-JF, 2008 WL 5245490 (N.D. Cal. Dec. 17, 2008)......................................4

*Gonzalez v. Google LLC*,
　2 F.4th 871 (9th Cir. 2021) .......................................................................................2, 6, 8, 9

*HomeAway.com, Inc. v. City of Santa Monica*,
　918 F.3d 676 (9th Cir. 2019).......................................................................................1, 3, 5, 6

*Kimzey v. Yelp! Inc.*,
　836 F.3d 1263 (9th Cir. 2016).......................................................................................4, 8, 9

*La Park La Brea A LLC v. Airbnb, Inc.*,
　285 F. Supp. 3d 1097 (C.D. Cal. 2017) .................................................................................8

iii

REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Leadsinger, Inc. v. BMG Music Pub.*,
   512 F.3d 522 (9th Cir. 2008) ................................................................................................. 10

*Lemmon v. Snap, Inc.*,
   995 F.3d 1085 (9th Cir. 2021) ........................................................................................ 4, 6, 9

*Nunes v. Twitter, Inc.*,
   194 F. Supp. 3d 959 (N.D. Cal. 2016) .................................................................................... 5

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) ................................................................................................ 4

*Turo Inc. v. City of Los Angeles*,
   No. 18-cv-06055-CAS, 2020 WL 3422262 (C.D. Cal. June 19, 2020) .................................. 5

*Van Buskirk v. Cable News Network, Inc.*,
   284 F.3d 977 (9th Cir. 2002) ................................................................................................ 10

*YZ Prods., Inc. v. Redbubble, Inc.*,
   545 F. Supp. 3d 756 (N.D. Cal. 2021) .................................................................................... 4

**STATUTES**

47 U.S.C. § 230 ....................................................................................................................... 3, 4, 5

iv
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn & Crutcher LLP

## I. INTRODUCTION

The crux of Plaintiffs' lawsuit is that Meta should have treated casino-themed video games differently from all the other third-party video games hosted on its platform. Plaintiffs do not take issue with the hundreds of other video games on Facebook that use virtual currency or offer in-app purchases. Instead, Plaintiffs' theory of liability depends on the *content* unique to casino-themed video games. According to Plaintiffs, because the third parties that made those games included an in-game virtual currency that can be used to play animated slot machines, the game developers ran afoul of state gambling laws. Plaintiffs seek to hold *Meta* liable for those third-party design choices and argue it should remove casino-themed games from its platform, but that is the exact sort of claim Section 230 bars. That Plaintiffs focus on one specific game genre—and on a particular payment mechanism selected by certain game developers—shows that this lawsuit treats Meta as the publisher of specific content created by others.

The Opposition confirms that Plaintiffs seek to hold Meta liable for content decisions made by third parties. If the video game developer had made a different decision—say, selling virtual currency for more chances to complete a candy-themed puzzle game—then Meta would not be liable under Plaintiffs' view of the law. But Plaintiffs contend Meta is liable because a third party designed online content in which players buy virtual currency to play a different type of game. The defining feature of Plaintiffs' claims is that liability hinges on content choices made by third parties, not Meta's own independent conduct. Section 230 precludes those claims.

Plaintiffs attempt to divert attention from the "hosting" they alleged in their Complaint, and now claim this case is actually all about "booking" transactions. But Plaintiffs cannot sever the third-party content hosted on Facebook from the online purchase of that content. Their argument to the contrary proceeds on a fundamental misreading of the Ninth Circuit's decision in *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019). *HomeAway* did not involve a purchase of virtual content at all. The law at issue regulated real-world vacation rental properties, and the Ninth Circuit held that a company using the internet to facilitate those rentals could not claim immunity from property licensing ordinances merely because the internet was used as part of the process. *Id.* at 682. The *HomeAway* decision emphasized that Section 230 immunity did not apply because liability there did

Gibson, Dunn & Crutcher LLP

1

REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

not depend on third-party content. *Id.* at 684. And the Ninth Circuit has since acknowledged that the online third-party listings in *HomeAway* were *irrelevant* to whether the rental of the unlicensed properties violated the law. *See, e.g.*, *Gonzalez v. Google LLC*, 2 F.4th 871, 898 (9th Cir. 2021). Here, by contrast, liability depends entirely on what kind of third-party content was purchased—specifically, virtual currency to play casino-themed video games.

Section 230 protects Internet intermediaries that distribute and process transactions for third-party content, such as the casino-themed video games that use virtual currency at issue here. Plaintiffs' position—which would isolate transactions for third-party content from the publication of that content—promises to "cut the heart out of section 230 by forcing websites to face death by ten thousand duck-bites." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1174 (9th Cir. 2008) (en banc). Under their mistaken view, Section 230 would shield a platform when hosting a third party's digital magazine with defamatory content for free, but that immunity would vaporize if the platform "books" a transaction in which users click a button in an app to pay for the defamatory article. Section 230 does not turn on such immaterial distinctions.

Plaintiffs' claims—both as initially pleaded and even as overhauled in the Opposition—set forth a publisher theory of liability that Section 230 bars as a matter of law. The Court should therefore dismiss the Master Complaint with prejudice.

## II.   ARGUMENT

Section 230 bars claims that have three elements: "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat as a publisher or speaker (3) of information provided by another information content provider." *Gonzalez*, 2 F.4th at 891 (cleaned up). Plaintiffs do not contest either the first or third element. (*See* Opp. at 9, *Wilkinson* Dkt. 104.) Their only challenge to the application of Section 230 rests on the assertion that they do not seek to hold Meta liable for publishing third-party casino-themed video games, but only for "booking" in-app transactions and providing neutral advertising tools to developers. (*Id.* at 10.)

Plaintiffs' claims necessarily treat Meta as the publisher of third-party content that is hosted, sold, or advertised on Facebook. Section 230 therefore bars those claims. And because any amendment would be futile, dismissal should be with prejudice.

2

REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn & Crutcher LLP

**A.   A Publisher Theory of Liability Pervades All Claims in the Complaint**

The Complaint unquestionably pleads a publisher theory of liability—that Meta, by publishing casino-themed video games created by third-party developers, became liable for the content choices of those third parties. Plaintiffs try to escape Section 230 by recharacterizing Meta's actions not as publication, but as the "booking" of transactions. This wordplay cannot obscure that all their claims hinge on the nature of third-party content that Meta hosted, and they thus fall squarely within Section 230's scope. (*See* Mot. at 8–10, *Wilkinson* Dkt. 99.)

**1.   *The Complaint Expressly Pleads a Publisher Theory of Liability.***

Every one of Plaintiffs' forty claims seeks to establish liability through alleging that Meta hosts, distributes, and/or operates casino-themed video games. (Compl. ¶¶ 153, 162, 171, 181, 189, 198, 206, 214, 223, 231, 239, 248, 257, 265, 274, 281, 289, 298, 304, 313, 320, 330, 339, 345, 354, 361, 371, 380, 386, 395, 401, 410, 416, 425, 431, 443, 453, 464, 484(B), 490, *Wilkinson* Dkt. 80.) Variants of "host," "distribute," and "operate" are used more than 110 times. For instance, Plaintiffs assert that Meta violated California's Unfair Competition Law by "hosting and facilitating" casino-themed video games. (*Id.* ¶ 153.) They also challenge the failure to "remove social casinos." (*Id.* ¶ 90.)

These claims necessarily treat Meta as the publisher of casino-themed video games. Plaintiffs' (disputed) liability theory turns on *content*—the games, virtual coins, and advertisements—all of which are "information provided by another information content provider." 47 U.S.C. § 230(c)(1). Plaintiffs do not allege anything illegal about the way Meta hosts apps, processes transactions, or displays advertisements for third-party developers. Instead, they assert a duty that "would necessarily require an internet company to monitor third-party content" hosted on the platform (the casino-themed video game apps) or sold within apps (the virtual coins), and to block or remove such content. *HomeAway*, 918 F.3d at 682. And that is precisely the theory barred by Section 230, because "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune." *Roommates.com*, 521 F.3d at 1170–71.

The claims advance a publisher theory whether the Court focuses on the hosting of the video games as a whole, or instead on components of the games, such as in-app purchases of virtual coins within the game itself. Imposing liability on Meta for processing in-app transactions for virtual coins

3
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn & Crutcher LLP

*is* imposing liability for publishing the game, because coin purchases are part and parcel of the game itself. The inescapable premise of Plaintiffs' claims is that they were "harmed because" Meta "hosted certain online content"—namely, the games and the virtual coins. *Goddard v. Google, Inc.*, No. 08-cv-02738-JF, 2008 WL 5245490, at *5 (N.D. Cal. Dec. 17, 2008). Simply put, no one could credibly say that Meta's "alleged duty in this case 'has *nothing* to do with' its editing, monitoring, or removing of the content" created by third parties on Facebook. *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1092 (9th Cir. 2021) (emphasis added) (quoting *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 852 (9th Cir. 2016)).

This result does not change just because Meta charges a service fee when processing transactions for third-party content. As Plaintiffs concede (Opp. at 18), Section 230 protects internet intermediaries when disseminating third-party content for free or for a fee. *See, e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119 (N.D. Cal. 2020). Congress sought to encourage "the vibrant and competitive free market that presently exists for the Internet and other interactive computer services" by shielding intermediaries engaged in commerce with respect to online content. 47 U.S.C. § 230(b)(2). District courts have thus applied Section 230 to claims alleging that a transaction processed by the defendant for a fee is impermissible because the third-party information sold on the website is illegal. *YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 769 (N.D. Cal. 2021) (Section 230 protects "e-commerce system" that "pocket[ed] a significant portion of profits" from purchases of infringing "online storefronts"); *Free Kick Master LLC v. Apple Inc.*, 140 F. Supp. 3d 975, 982–83 (N.D. Cal. 2015) (Section 230 bars claims "based on 'information originating with a third-party user of the service'" even when defendant profits from sale of allegedly unlawful app) (quoting *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)). To hold otherwise would allow plaintiffs to attribute third-party content to intermediaries through "creative pleading." *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016).

### 2. *HomeAway* Does Not Apply to Plaintiffs' Claims, All of Which Depend on the Nature of Third-Party Content.

Plaintiffs no longer wish to defend the allegations in the Complaint they filed—that "Facebook is responsible for making social casinos available to the public." (Compl. ¶ 320.) Although Plaintiffs alleged that Meta violated the UCL by "hosting and facilitating" casino-themed video games (*id.*

4
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn & Crutcher LLP

¶ 138), they now contend that their "claims do not seek to hold [Meta] liable for publishing or hosting social casino apps" (Opp. at 7). Their new mantra—repeated again and again—is that this case targets only Meta's "booking" of in-app purchases for virtual coins in third-party casino-themed video games. (*Id*. at 1–2, 4–5, 7, 10–13, 17, 19–23.) They have made this stark shift in rhetoric in an attempt to fit within the scope of *HomeAway*. According to Plaintiffs, *HomeAway* establishes that Section 230 does not protect internet intermediaries "from liability for 'booking' illegal transactions for a fee—even when those transactions flow from the protected third-party content." (*Id.* at 1–2.) But Plaintiffs misread *HomeAway*, which does not create an expansive "booking" exception to Section 230.

*HomeAway* concerned a preemptive challenge to an ordinance prohibiting the rental of unlicensed properties. 918 F.3d at 680. The Ninth Circuit concluded that Section 230 did not protect online platforms that processed transactions for unlicensed rentals because the ordinance did not create a duty that "would necessarily require an internet company to monitor third-party content." *Id.* at 682. The crucial fact, as the Ninth Circuit stressed, was that the platforms "face[d] no liability for the content of the bookings; rather any liability arises only from the unlicensed booking." *Id.* at 684. Thus, courts have denied Section 230 protection when liability does not depend on the third-party content peripherally involved in the transaction. *See Turo Inc. v. City of Los Angeles*, No. 18-cv-06055-CAS, 2020 WL 3422262, at *8–9 (C.D. Cal. June 19, 2020) (unlicensed car rental), *rev'd*, 847 F. App'x 442 (9th Cir. 2021); *Airbnb, Inc. v. City and Cty. of S.F.*, 217 F. Supp. 3d 1066, 1072–73 (N.D. Cal. 2016) (unlicensed vacation rentals); *see also, e.g.*, *Nunes v. Twitter, Inc.*, 194 F. Supp. 3d 959, 967–68 (N.D. Cal. 2016) (holding Section 230 did not apply where defendant "would be liable whether the content of the unwanted tweets is bad or good, harmful or harmless").

Because publishers routinely sell third-party content, it would have been surprising if the Ninth Circuit held that Section 230 evaporates when online intermediaries process (or "book") transactions for third-party content. *HomeAway* held only that a transaction that is illegal for reasons *independent of* the content created by the third party does not gain immunity under Section 230 simply because the transaction occurred online. *See* 918 F.3d at 684. By contrast, claims that turn on the legality of *third-party internet content*—like those here—fall within the scope of Section 230. This distinction comes straight from the text of the Communications Decency Act. While Section 230 protects the online

5
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn &
Crutcher LLP

dissemination of third-party "information," 47 U.S.C. § 230(c)(1), it does not protect the real-world distribution of unlicensed rental properties just because an internet intermediary is involved. But the claims here, as explained above, *do* turn on the nature of third-party content—specifically, the content of casino-themed video games.

Subsequent decisions by the Ninth Circuit confirm that *HomeAway* itself refutes Plaintiffs' novel argument that the "booking" of transactions is a non-publisher activity. Precedent draws a clear line between cases like *HomeAway* in which third-party content forms an incidental part of the violation, and cases like this one in which the liability depends on the nature of the third-party content. *HomeAway*, 918 F.3d at 680, 684. *HomeAway* turned on the fact that the "ordinance did not 'proscribe, mandate, or even discuss the content of the [third-party] listings'"—which meant that "the vacation rental platforms did not face liability for the content of their listings." *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019); *see Gonzalez*, 2 F.4th at 898. Plaintiffs' reliance on *Internet Brands* and *Lemmon* is misplaced for the same reason. Both cases emphasized that the claims at issue targeted independent conduct by the defendant without imposing liability for the "alleged failure to adequately regulate access to user content." *Internet Brands*, 824 F.3d at 853; *see Lemmon*, 995 F.3d at 1092–93 & n.4.

Here, the Complaint and Opposition both make clear that Meta's liability would hinge on access provided on Facebook to third-party content. Plaintiffs repeatedly assert that Meta violated the law because users are "substantially certain" to use virtual coins on animated slots in casino-themed video games. (Opp. at 1, 6–7, 11, 14, 16.) Plaintiffs' theory is that the gambling violation does "not arise[] only from [the transaction]," *HomeAway*, 918 F.3d at 684, but instead from the player's likely use of the coins in the casino-themed video game. Plaintiffs would not argue that Meta's conduct would be illegal if virtual coins were used to play a video game that had nothing to do with a casino—such as *Madden NFL* or *Sonic the Hedgehog*. The claims thus require Meta to monitor the content of third-party apps hosted on Facebook—*i.e.*, a duty to detect whether purchasers use virtual currency to play casino-themed video games—as opposed to monitoring only "distinct, internal, and nonpublic" requests to purchase virtual coins. *Id.* at 682.

Plaintiffs' treatment of *Coffee v. Google, LLC*, No. 20-cv-03901-BLF, 2022 WL 94986 (N.D.

Gibson, Dunn & Crutcher LLP

6
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Cal. Jan. 10, 2022), undercuts their own position. In all relevant respects, *Coffee* is just like this case: the plaintiff there sought to hold the defendant liable for processing in-app transactions (there, as here, at a 30% service fee) for virtual currency that could be "wager[ed]" on alleged gambling activity (there, "loot boxes"). *Id.* at *6, 8. Distinguishing *HomeAway*, Judge Freeman held that Section 230 barred claims against the defendant based on its "publication of third-party apps" and its "provision of neutral tools and services to all developers" (including the payment-processing tool). *Id.* at *6. Plaintiffs say that those purchasers of virtual coins could spend them on content other than loot boxes, while the purchasers here are "substantially certain" to use their virtual coins on "slot machines games" in casino-themed video games. (Opp. at 24–25.) Apparently Plaintiffs' theory is that Meta is *not* publishing content when processing in-app transactions for virtual coins in casino-themed video games, but somehow *is* publishing content when processing transactions for coins in different games. (*See id.* at 14 n.13.) That distinction is completely arbitrary and untethered to any precedent or legal principle.

Plaintiffs' supplemental authority (*Wilkinson* Dkt. 107), *Doe v. Roblox Corp.*, No. 21-cv-03943-WHO, 2022 WL 1459568 (N.D. Cal. May 9, 2022), illustrates why Section 230 applies here, like it did in *Coffee*. In *Roblox*, a plaintiff sued a developer of an online platform for failing to disclose that it might delete virtual items purchased by users. *Id.* at *1. Judge Orrick explained that Section 230 did not apply because the defendant would be liable only for its "own failure to disclose that it can delete previously purchased items with no warning." *Id.* at *9. Unlike in *Coffee*, the plaintiffs in *Roblox* did "not seek to tell [the defendant] what it can and cannot post from third parties." *Id.* But that is exactly what Plaintiffs are seeking to do here, as they have specifically targeted a subset of third-party content hosted on Facebook as illegal—casino-themed video games—and have challenged Meta's failure to remove that specific content. (*E.g.*, Compl. ¶ 90.)

Plaintiffs' "booking" rule is nothing more than an attempt to use in-app transactions as a hook to hold intermediaries liable for third-party content where Section 230 would otherwise apply. Consider an online service that offers subscriptions to online third-party newspapers. If one of those online newspapers contained defamatory material, it is beyond dispute that a plaintiff could not sue the online service for disseminating defamatory articles through its service. *See Kimzey*, 836 F.3d at 1270. But under Plaintiffs' approach, Section 230 could be avoided entirely if the claims instead targeted the

7
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn & Crutcher LLP

"booking" of subscriptions to the same defamatory material within a mobile app. There is no principled reason to treat these two scenarios differently.

In the end, even Plaintiffs must admit that Section 230 shields in-app transactions processed by an internet intermediary where third-party content is the source of the illegality. They acknowledge that Section 230 would protect an online platform when booking a fraudulently advertised rental because "liability for the fraud claim would (impermissibly) turn on *publication* of the third-party's fraudulent misrepresentation." (Opp. at 18–19 & n.15.) That is, in fact, what courts have held. *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 822, 831–32 (2002) (dismissing claim against online marketplace that charged fees on fraudulently listed product); *see Kimzey*, 836 F.3d at 1270 (approving *Gentry*); *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1107 (C.D. Cal. 2017). Plaintiffs do not apply this insight to this case, which they unconvincingly assert is somehow different. It is not.

### 3. *Plaintiffs Cannot Avoid Section 230 by Recharacterizing Publication Activity as Unfair Business Practices.*

Plaintiffs conclude with a half-hearted argument that Meta "directly participat[ed] in unfair business practices" by providing an advertising platform to developers of casino-themed video games. (Opp. at 25–27.) They claim that advertising tools informed by data analytics "become unlawful" when ads "target vulnerable consumers." (*Id.* at 29.) And they contend that these claims avoid Section 230 because these business practices are "distinct from the publication of third-party content." (*Id.* at 26.)

But the Ninth Circuit has held, time and again, that this theory of liability necessarily treats the internet intermediary as the publisher or speaker of third-party advertisements. In *Gonzalez*, for example, the plaintiffs alleged that the defendant aided in international terrorism by "target[ing] users for advertising" of ISIS-related content "based on the content they have selected and other information about users." 2 F.4th at 880, 894–95. These claims treated the defendant "as a publisher" who "failed the prevent" ISIS "from using its platform" to "disseminate its message of terror." *Id.* at 892. In *Dyroff*, the plaintiff tried to separate a website's features and functions from the allegedly harmful third-party content. 934 F.3d at 1095. But these claims likewise failed because the website, "[b]y recommending user groups and sending email notifications," "was acting as a publisher of others' content." *Id.* at 1098. The same is true of Meta's tools for advertising third-party content.

8
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn &
Crutcher LLP

Plaintiffs cannot evade this precedent by framing their claims around a duty not to engage in "unfair business practices." (Opp. at 26.) If this kind of "artful skirting" worked, Section 230 would bar plaintiffs libeled by third-party communications from suing intermediaries for defamation, but would allow lawsuits for other torts based on the same information. *Kimzey*, 836 F.3d at 1266. The Ninth Circuit has already rejected that formalistic approach, explaining that "what matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009). *Gonzalez* illustrates this rule. There, the plaintiffs argued "that their claims do not treat Google as a publisher, but instead assert a simple 'duty not to support terrorists.'" 2 F.4th at 891. That argument went nowhere because "publication itself is the form of support Google allegedly provided" to the terrorists—that is, the claims sought "to impose liability for the content Google allowed to be posted on its platform." *Id.* Here, too, the "business practices" claims allege that Meta offered to developers of casino-themed video games publishing tools for targeted advertisements.

According to Plaintiffs, whether a tool is "neutral" matters only in determining whether the internet intermediary is an "information content provider" with respect to content hosted on its website. (Opp. at 27.) But Plaintiffs overlook that claims targeting tools "meant to facilitate the communication and content of others" necessarily implicate publisher theories of liability. *Gonzalez*, 2 F.4th at 894 (quotation marks omitted). That the tool is "neutral" then establishes that the illegality of the content originates with a third party, rather than any "material contribution" of the intermediary that disseminated the content. *Id.* at 893. Plaintiffs cannot circumvent either the *second* or the *third* element of Section 230 by isolating a neutral communications tool (such as data analytics) from the publication of third-party content (such as targeted advertising). *See, e.g., id.* at 892; *Dyroff*, 934 F.3d at 1098. This confirms Plaintiffs' misreading of *Lemmon* (Opp. at 26), as Section 230 allows claims attacking "neutral tools" only "so long as plaintiffs' claims do not blame [the intermediaries] for the content that third parties generate with those tools." *Lemmon*, 995 F.3d at 1094; *see, e.g., Calise v. Meta Platforms, Inc.*, No. 21-cv-06186-JSW, 2022 WL 1240860, at *4 (N.D. Cal. Apr. 27, 2022) (holding that claims "based on Meta's alleged solicitation and publication" of third-party advertisements necessarily

9
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn &
Crutcher LLP

1  "stem[] from Meta's role as publisher" even if the general duty comes from contract law).

2  All of Plaintiffs' claims—whether pleaded under the label of unlawful gambling, unfair business practices, or unjust enrichment—turn on Meta's alleged duty to remove third-party content regarding casino-themed video games.  Section 230 therefore bars the claims.[1]

**B.     The Complaint Should Be Dismissed With Prejudice**

The Court should not grant further leave to amend because no additional factual allegations could establish a non-publisher theory of liability here.  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).  Plaintiffs ask for leave to amend on the ground that additional, unspecified facts could bear on whether Meta is an "information content provider"—an element that Plaintiffs have not even contested.  (Opp. at 30.)  This lack of specificity is reason enough to deny amendment.

Plaintiffs also ask for leave to amend because they speculate that discovery in "ongoing litigation" against the developers of casino-themed video games could lead to a new non-publisher claim against Meta.  (Opp. at 30.)  But Plaintiffs identify no additional facts about payment-processing or advertising tools that could change the conclusion that their claims seek to treat Meta as a publisher of third-party content.  Nor do they provide any basis for their speculation that Plaintiffs' counsel will uncover a whole new category of non-publisher facts and that district courts in parallel litigation will lift the protective orders applicable to the discovery.  Plaintiffs cannot keep this case on ice while they fish for supposed evidence.

### III.     CONCLUSION

Plaintiffs' claims seek to hold Meta liable not for content that it created, but for content that it hosted.  Section 230 bars all of these claims.  The Court should dismiss the Complaint with prejudice.

Dated: May 13, 2022

GIBSON, DUNN & CRUTCHER LLP

By:  /s/ *Christopher Chorba*
Christopher Chorba

Attorneys for Defendant META PLATFORMS, INC.

---

[1] Plaintiffs argue that the Complaint does not incorporate public webpages by reference.  (*Wilkinson* Dkt. 105, at 2.)  But it "referenced" them "extensively" as factual support, not merely to show their existence.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

10
REPLY OF DEFENDANT META PLATFORMS, INC. IN SUPPORT OF
MOTION TO DISMISS COMPLAINT UNDER CDA § 230
CASE NO. 3:21-CV-02777-EJD

Gibson, Dunn & Crutcher LLP